UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROGER CLEO MARTIN,

              Plaintiff,

v.

RUSS WAYNE, OSCEOLA COUNTY
JAIL ADMINISTRATOR, CHERYL
SIMPSON and SHANNON STONE
,

              Defendants.

CASE NO: 1:16-cv-1314

HON. PAUL L. MALONEY
U.S. District Judge

HON. RAY KENT
U.S. Magistrate Judge

Roger Cleo Martin
in propria persona
P.O. Box 415
5061 E. 6 Mile Road
Sears, MI 49679

Thomas R. Shimmel (P41280)
KITCH, DRUTCHAS, WAGNER, et al.
Attorneys for Defendant Stone
One Woodward Ave., Suite 2400
Detroit, MI 48226-5485
313/965-6954
thomas.shimmel@kitch.com

Allan C. Vander Laan (P33893)
Curt A. Benson (P38891)
Bradley C. Yanalunas (P80528)
CUMMINGS, McCLOREY, DAVIS & ACHO, PLC
Attorneys for Defendant Russ Wayne
2851 Charlevoix Drive SE, Suite 327
Grand Rapids, MI 49546
616/975-7470
avanderlaan@cmad-law.com
cbenson@cmda-law.com

Randall A. Juip (P58538)
Anthony D. Pignotti (P71100)
FOLEY, BARON, METZGER & JUIP, PLLC
Attorneys for Defendant Cheryl Simpson
38777 Six Mile Road, Suite 300
Livonia, MI  48152
734/741-1800
rajuip@fbmjlaw.com
apignotti!fbmjlaw.com

**BRIEF IN SUPPORT OF MOTION BY DEFENDANT RUSS WAYNE
SUMMARYJUDGMENT UNDER FED. R. CIV. P. 56**

**\*\*\*ORAL ARGUMENT REQUESTED\*\*\***

i

## <u>TABLE OF CONTENTS</u>

Index of Authorities.................................................................................iii

Questions Presented...............................................................................vi

Statement of Facts ................................................................................. 2

Standard of Review................................................................................. 6

Argument................................................................................................ 7

I.   Defendant Wayne Has Qualified Immunity .......................................... 7

II.  Dilantin and Other Medication ............................................................ 8

III. Extra Mats ......................................................................................... 10

Conclusion and Relief Requested .......................................................... 10

## INDEX OF AUTHORITIES

### Cases

*Anderson v. Liberty Lobby, Inc.*
77 U.S. 242, 247-8 (1986).....................................................................7

*Atiyeh v. Capp*
 449 U.S. 1312, 1315–16 (1981) .........................................................13

*Blackmore v. Kalamazoo County*
390 F.3d 890, 895 (6th Cir. 2004) .......................................................11

*Chavarria v. Stacks*
102 F. App'x 433, 435 (5th Cir.2004) ..................................................14

*City of Canton v. Harris*
489 U.S. 378, 385 (1989) .....................................................................9

*Conlin v. Thaler*
347 F. App'x 983, 984 (5th Cir.2009) ..................................................14

*Dunn v. Tennessee*
697 F.2d 121, 128 (6th Cir. 1982) .......................................................11

*Farmer v. Brennan*
511 U.S. 825, 839 (1994) ....................................................................11

*Garretson v. City of Madison Heights*
407 F.3d 789, 797 (6th Cir. 2005) .......................................................11

*Gibson v. Matthews*
926 F.2d 532, 535 (6th Cir. 1991) .......................................................12

*Harlow v. Fitzgerald*
457 U.S. 800, 818 (1982) ......................................................................7

*Hoard v. Saginaw Cty. Jail*
No. 05-60095, 2005 WL 2491453, (E.D. Mich. Oct. 7, 2005) ................9

*Hudson v. McMillian*
503 U.S. 1, 9 (1992) ............................................................................12

*Hudson v. Palmer*
468 U.S. 517, 526–27 (1984) ..............................................................13

*Ivey v. Wilson*
832 F.2d 950, 955 (6th Cir.1987) ......................................................................12

*Jones v. Muskegon Count*
 625 F.3d 935, 941 (6th Cir. 2010) ...................................................................11

*Kamau v. La. State Police Dep't*
No. 09–1488–P, 2013 WL 5462234, at *10 (W.D.La. Sept. 30, 2013) ...................14

*Livermore ex rel Rohm v. Lubelan*
476 F.3d 397, 403 (6th Cir. 2007) .......................................................................7

*Mattox v. Edelman*
851 F.3d 583, 598 (6th Cir. 2017) .....................................................................11

*Monell v. Dept. of Social Services of City of New York*
436 U.S. 658, 694 (1978) ....................................................................................9

*Mullenix v. Luna*
___ U.S. ___, 136 S. Ct. 305, 308 (2015) ...........................................................8

*Pearson v. Callahan*
555 U.S. 223, 232 (2009) ...................................................................................8

*Phillips v. Roane County*
534 F.3d 531, 539 (6th Cir. 2008) .....................................................................10

*Powers v. Hamilton Cty Public Defenders*
501 F.3d 592, 606-07 (6th Cir. 2007) ..................................................................9

*Rouster v. County of Saginaw*,
749 F.3d 437, 446 (6th Cir. 2014) .....................................................................11

*Santiago v. Ringle*
734 F.3d 585, 589 (6th Cir. 2013) .......................................................................7

*Shreve v. Franklin County, Ohio*
743 F.3d 126, 132 (2014) ...................................................................................7

*Thomas v. City of Chattanooga*
398 F.3d 426, 429 (6th Cir. 2005) .......................................................................9

*Vance v. Peters*
95 F.3d 987, 992 (7th Cir. 1996) ......................................................................12

***Watkins***
273 F.3d at 686  ...................................................................................11

***Williams v. Ward***
567 F.Supp. 10, 15 (E.D.N.Y.1982) ......................................................14

***Wilson v. Seiter***
501 U.S. 294, 298 (1991)  ....................................................................13

***Wysong v. City of Heath***
260 Fed. Appx. 848, 857 (6th Cir. 2008) ..............................................7

***Zatko v. Rowland***
835 F.Supp. 1174, 1181 (N.D.Cal.1993)  ..............................................14

## **QUESTIONS PRESENTED**

I.    SHOULD PLAINTIFF MARTIN MEDICAL MALPRACTICE CLAIM BE DISMISSED AS TO CAPTAIN RUSS WAYNE AS HE DID NOT PARTICIPATE IN ANY MEDICAL DECISION, NOR CAN HE BE HELD VICARIOUSLY LIABLE FOR THE MEDICAL DECISIONS OF OTHERS?

Plaintiff Martin Answers:           "No."

Defendant Russ Wayne Answers:  "Yes."


II.    SHOULD PLAINTIFF MARTIN'S "DELIBERATE INDIFFERENCE" OR "CRUEL AND UNUSUAL PUNISHMENT" CLAIM AGAINST CAPTAIN RUSS WAYNE BE DISMISSED FOR FAILURE BY MARTIN TO DEVELOP AN EVIDENTARY RECORD TO ESTABLISH LIABILITY OR TO DEFEAT THE QUALIFIED IMMUNITY THAT APPLIES TO CAPTAIN RUSS WAYNE?

Plaintiff Martin Answers:           "No."

Defendant Russ Wayne Answers:  "Yes."

## INTRODUCTION

The main thrust of the Plaintiff's complaint is an allegation of medical malpractice against a third party medical provider to inmates at the Osceola County Jail. This part of the complaint does not appear to be directed at Captain Russ Wayne, the Jail Administrator.

Osceola County had a contract with Premier Correctional Services (PCS) providing that PCS will provide medical services to inmates at the Osceola County Jail.  Plaintiff has filed this action complaining about the medical treatment he received from PCS.  As stated above, Mr. Martin's complaint is at its core an allegation of medical malpractice against PCS. The Plaintiff has not alleged, nor has he produced any evidence, that Captain Wayne had any personal involvement with the medical judgment of the treating doctor and nurse. Moreover it is axiomatic that Captain Wayne cannot be held vicariously liable for the alleged medical negligence of PCS.  This portion of the Plaintiff's complaint simply does not implicate Captain Wayne.

The Plaintiff does however claim that Captain Wayne "promoted stress and sleep deprivation" by keeping the jail cell lights on at night.   But this claim is unavailing. Obviously jail cell lights, especially in multi-inmate cells, are not turned off completely leaving the cell in pitch blackness. The lights are instead dimmed low. This is a reasonable (and frankly obvious) security measure for prison guards to ensure their own safety and the safety of other inmates. It hardly constitutes cruel and unusual punishment.

Mr. Martin also complains that Captain Wayne refused to provide Mr. Martin with an extra sleeping mat. But Captain only provides such mats if ordered by a doctor. As no one ordered a mat for Mr. Martin, Captain Wayne did not provide one.

00768477-1

1

Because Plaintiff has failed to establish Defendant Wayne, both in his individual and official capacity, violated his federal constitutional rights, summary judgment in his favor as to all claims against him is proper.

## STATEMENT OF FACTS

On November 15, 2013, the Plaintiff, Roger Martin, was convicted of an OUIL-III offense and sentenced to serve 363 days in the Osceola County jail. **(Exhibit 1, Jail Records)**.  Martin alleges on the first night of his confinement: (1) Nurse cut Dilantin dose in half; (2) Nurse took away Xanax and Ibuprofen; (3) Defendant Wayne and nurse failed to provide him with an extra sleeping mat and (4) Defendant Wayne forced Plaintiff to sleep on the floor. *See* Dkt 44.  Moreover, Martin alleges the jail environment "promoted stress and sleep deprivation" by leaving lights on all night, allowing inmates to stay up all night. *Id*.  As a result, Martin claims he suffered a hemorrhage stroke, which left "no physical impairment", but a diminished mental capacity. *Id*.

Martin clarified his allegations regarding the failure to provide proper medication:

> Q.    Okay. In your own words as you sit here today can you tell me exactly what Osceola County Jail did that you object to or failed to do?
>
> A.    The first night I was in there -- the first day I was in there the nurse took away the Xanax that I had for sleeping. She said you couldn't have it. She wouldn't let me have any Ibuprofen, which I took on a regular basis, and cut the Dilantin that I had for seizures in half.

**(Exhibit 2, Martin Deposition at 40:21-41:4)**

> Q.    Sure. Will you read that back? (The following record was read by the reporter at 12:48 p.m.)
> "Question: As you sit here today you're not entirely sure what your complaint is regarding how they administered medication to you while you were in jail from November 9 of 2013 to September of 2014."

A.     No. My complaint is they cut my Dilantin dose in half and took the Ibuprofen away and Xanax away.

BY MR. BENSON:

Q.     They did take Xanax away?

A.     Yeah.

Q.     You never received that while in jail?

A.     Not all.

Q.     Any other complaints about medication?

A.     I can't think of any right offhand.

*Id.* **at 48:2-18**

Martin identified Shannon Stone, R.N. as the Osceola County jail nurse who deprived him

of his medication:

Q.     Why did you file a lawsuit against Shannon Stone?

A.     For taking away the medication, and for not providing me with --

Q.     Let's just do --

A.     -- an extra --

Q.     -- them one at a time. Took away your medication?

A.     Cut my medication in half, and took away the other one without providing a replacement for it.

Q.     Okay.· And that was on November 15, 2013, when you went to the jail?

A.     Yes.

Q.     Okay. So it's your opinion that Shannon Stone took away your Xanax; right?

A.     Yep.

Q.     And -- Are you okay? Do you need a break?

A.     Yeah, go ahead.

Q.     You're okay?

A.     Yeah. I'm all right.· I'm just adjusting.· It's just --

Q.     Sure. So you're claiming that she took away your Xanax; right?

A.     Yeah.

Q.     Right?

A.     Right.

Q.     And cut your Dilantin in half?

A.     Correct.

**(Exhibit 3, Second Martin Deposition at 43:15-44:16)**

Defendant Stone was the CEO of Premiere Correctional Services.  At all times pertinent to this action, they were under contract with Osceola County to provide medical services to the inmates.

On January 1, 2011, the Osceola County jail entered into an agreement with Premier Correctional Services Company to provide health care services and management services at the jail. **(Exhibit 4, PCS Agreements)**.  The Agreement provides the following provisions:

> PCS shall provide the health care services and management services at the jail.  These services shall be at PCS's cost, and in exchange for the compensation provided herein.
>
> V. INDEPENDENT CONTRACTOR
>
> It is mutually understood and agreed, and it is the intent of the parties hereto that an independent contractor relationship be and is hereby established under the terms and conditions of this Agreement.  The employees or agents of PCS are not now nor shall they be deemed to be employees of the COUNT or the SHERIFF and the employees of the COUNTY and the SHERIFF are not now nor shall they be deemed to be employees of PCS.

The above agreement was renewed on January 1, 2014 and ran through the remainder of Plaintiff's incarceration at the jail. *Id.*  The renewal contained the same indemnity provision.

During his deposition, Plaintiff addressed allegations regarding the failure to provide him an extra sleeping mat:

> Q.      Then you have a complaint about not receiving a mattress, which would have helped your sore back?
> A.      Yeah.
> Q.      Did you ever receive an extra mattress?
> A.      No.
> Q.      Do you know whether a doctor ever prescribed or ordered the jail to give you an extra mattress?
> A.      I don't know. Whether the doctor did or not?

Q.    Yeah, whether a doctor ever told the jail that this man needs an extra mattress?

A.    I don't know. I have no way of knowing. I'm going to assume he probably didn't but I asked them more than once. I showed them the judgment of sentence, the order on that, and told them it's on there because I asked for an extra mattress specifically and they were giving extra mattresses out to anybody else that wanted one but they wouldn't give me one.

Q.    Okay. When you say extra mats you're talking about an extra mattress, correct?

A.    Yeah, they're mats, they're not mattresses.

**(Exhibit 2, Martin Deposition at 48:19-49:13)**

Martin has not provided evidence of a doctor recommendation or a Court order requiring he receive additional mats. Defendant Wayne and Osceola County jail provided Martin with constitutionally adequate and reasonable accommodations. Attached to this brief is a video which shows him in his cell and depicts his living quarters. **(Exhibit 5, Cell Video)**.

Moreover, Plaintiff alleges Nurse Shannon Stone denied him extra mattresses:

Q.    No. My question was: Why is it your conclusion that Shannon Stone was in charge of the extra mats?

A.    She was in charge of the healthcare at the jail.

Q.    Okay. So, therefore, you believe she's in charge of giving out extra mats?

A.    I --

Q.    Does she have any mats?

A.    Uh-huh.

Q.    I don't know how the jail works. Does she have mats?

A.    The jail has plenty of mats. There's plenty of them there. They give them out on medical referral. So if I asked the jail administrator for an extra mat, he said, "Ask the nurse about it."

**(Exhibit 3, Second Martin Deposition at 48:12-25)**

Plaintiff described another issue he had with his incarceration:

Q.    Are there any other complaints that you have? So far we've talked medication, we've talked about not getting an extra mattress, and we've talked about your problems with the nurse. Anything else?

A. Lighting being left on all night. Light enough you couldn't sleep. Letting the other people in the jail stay up all night and hoot and holler and carry on, there's no way you can sleep.

Q. But that affected everybody in the jail, not just you?

A. I don't know how it affected other people but it certainly did affect me.

Q. I'm saying if they left the lights on all night everybody experienced that, that wasn't just you?

A. Yeah.

Q. It's not like they turned the lights on just to cause you problems. They just left the light on for whatever reason and it affected different people didn't differently, correct?

A. I suppose.

Q. When you're in maximum were the lights on in maximum?

A. Uh-huh.

Q. In a yes?

A. Yes.

Q. Did you spend the whole --

A. They turned them down but it was still light enough to be really annoying.

**(Exhibit 2, Martin Deposition at 52:17-53:17)**

Osceola Jail Minimum Standards of Conduct provides:

BASIC DUTIES OF THE CORRECTION OFFICER (SEE JOB DESCRIPTION)

8. Cell lights to be turned on at 0600 daily. Lights will be turned half off at 2330 Sunday through Thursday and 0130 on Friday and Saturday. At discretion of the Sergeant, may be allowed to stay on to finish current television program. (Movie, Sporting Event). **(Exhibit 6, Jail Standards)**.

The Osceola County jail policy allowing for constant illumination of a prison unit at night prevents guards from being assaulted and is a reasonable security measure.

Martin has provided no evidence in support of his claims, therefore summary judgment in favor of Captain Wayne is proper.

## <u>STANDARD OF REVIEW</u>

Summary judgment is proper where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A

court "must grant summary judgment," if the movant shows that no genuine issue of material fact remains. ***Santiago v. Ringle***, 734 F.3d 585, 589 (6th Cir. 2013).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." ***Anderson v. Liberty Lobby, Inc.***, 77 U.S. 242, 247-8 (1986) *emphasis in original.* Moreover, "[a] dispute is 'genuine' only if based on *evidence* upon which a reasonable jury could return a verdict in favor of the non-moving party." ***Shreve v. Franklin County, Ohio***, 743 F.3d 126, 132 (2014) *emphasis in original.* A court is not obligated to treat "a naked assertion" as establishing a "fact." ***Wysong v. City of Heath***, 260 Fed. Appx. 848, 857 (6th Cir. 2008).

## ARGUMENT

The fundamental failing of Martin's claims against Captain Wayne is the lack of any factual basis for those claims. This is compounded by the reality that, as a government officer, Captain Wayne has "qualified immunity" against any federal claim, because of Martin's lack of evidence to show a violation of federal law.

## I.   DEFENDANT WAYNE HAS QUALIFIED IMMUNITY

"[G]overnment officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ***Harlow v. Fitzgerald***, 457 U.S. 800, 818 (1982). "When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." ***Livermore ex rel Rohm v. Lubelan***, 476 F.3d 397, 403 (6th Cir. 2007).

The issue of an officer's qualified immunity invokes a two-pronged inquiry. "First, the court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "Second, if a plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id*. A right is "clearly established" where existing case law precedence demonstrate the existence of the right to be "beyond dispute," such that "every reasonable officer would have understood that what he is doing violates that right." *Mullenix v. Luna*, ___ U.S. ___, 136 S. Ct. 305, 308 (2015).

In this context, courts must not define clearly established law "at a high level of generality" but, rather, must focus on whether the "particular conduct" at issue is established to be violative of law. *Id*. Moreover, qualified immunity covers "mistakes in judgment, whether the mistake is one of fact or one of law." *Pearson*, 555 U.S. at 231.

As described above, Martin's federal claims fail fundamentally because he has failed to present any factual basis for a finding that Captain Wayne engaged in any conduct violative of Plaintiff's federal rights. Because Martin has not shown a violation of his federal rights, there is no basis to deny Captain Wayne his qualified immunity against his claims.

## II.   DILANTIN AND OTHER MEDICATIONS

Martin's Complaint, and subsequent testimony, directs allegations of negligent distribution of Dilantin, as well as Xanax and Ibuprofen, towards Nurse Stone. Importantly, Martin does not allege *any* liability on behalf of Captain Wayne regarding these allegations. Moreover, there is no suggestion that Captain Wayne had knowledge

of Martin's levels of Dilantin or that he would even understand it.  However, if this Court is inclined to identify a *Monell* claim because Captain Wayne is a Defendant in both his *official* and individual capacities, it must fail.

A local government cannot be sued for alleged federal constitutional injury "inflicted solely by its employees or agents." ***Monell v. Dept. of Social Services of City of New York***, 436 U.S. 658, 694 (1978). "Respondeat superior or vicarious liability will not attach." ***City of Canton v. Harris***, 489 U.S. 378, 385 (1989). Rather, to prevail against the municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." ***Thomas v. City of Chattanooga***, 398 F.3d 426, 429 (6th Cir. 2005). It is only when the execution of a municipality's official policy or custom inflicts injury that the municipality may be held liable. ***Id***.; ***Monell***, 436 U.S. at 694. However, the Court has held, "A public official sued in his official capacity for carrying out official policy would be a "person" for purposes of injunctive relief, but a non-"person" in an action for damages." ***Id***.

To succeed on a §1983 claim, Plaintiff must establish the high hurdle elements that his constitutional rights were violated and that a policy or custom of the municipality was the "moving force" behind the deprivation of his constitutional rights.  ***Powers v. Hamilton Cty Public Defenders***, 501 F.3d 592, 606-07 (6th Cir. 2007) (citing ***Monell***, 436 U.S. at 691).

The United States District Court in the Eastern District of Michigan heard a case directly on point.  In ***Hoard v. Saginaw Cty. Jail***, No. 05-60095, 2005 WL 2491453, (E.D. Mich. Oct. 7, 2005), the Jail Administrator was named as a Defendant because he was in a position of authority and administrative responsibility.  The Court dismissed the

Defendant because, "the Plaintiff failed to indicate that [the Jail Administrator] was personally involved in conduct violative of Plaintiff's constitutional rights." *Id*. at 2. Additionally, the Court held the Jail Administrator should be dismissed because, "Plaintiff identifies no specific custom or policy which contributed to, or resulted in, his alleged treatment." *Id.* at 2.

In this case, Captain Wayne, in his official capacity, cannot be held liable because Plaintiff has not established a "policy or custom" that caused his constitutional violation. As previously stated, Plaintiff has not alleged Captain Wayne implemented any policy regarding the administration of Dilantin that violated his constitutional rights. Rather, his allegations are clear: Nurse Stone made the decision, based on her professional medical background, how the Dilantin should be administered. Therefore, Captain Wayne, in his official and individual capacities, must be dismissed.

## III.  EXTRA MATS

Martin's claims towards Captain Wayne regarding his failure to provide extra mats at his request must fail. While the legal theories are not entirely clear upon inspection of Martin's Complaint, this Court could be inclined to interpret either a deliberate indifference or Eighth Amendment "Cruel and Unusual Punishment" claim with respect to allegations of a denial of extra mats. Regardless, under a deliberate difference or a "Cruel and Unusual Punishment" analysis, summary judgment in favor of Captain Wayne is proper.

### a.  Deliberate Indifference

A constitutional claim for deliberate indifference to serious medical needs requires a showing of objective and subjective components. *Phillips v. Roane County*, 534 F.3d 531, 539 (6th Cir. 2008). The objective component requires a plaintiff to show the

existence of a "sufficiently serious medical need." ***Blackmore v. Kalamazoo County***, 390 F.3d 890, 895 (6th Cir. 2004). A "serious" medical need includes either (1) a condition that has been diagnosed by a physician as mandating treatment or (2) a condition that is so obvious that even a lay person could easily recognize the need for medical treatment. ***Mattox v. Edelman***, 851 F.3d 583, 598 (6th Cir. 2017).

To satisfy the subjective requirement, the Plaintiff must show that the individual Defendant possessed "a sufficiently culpable state of mind in denying [him] medical care." ***Blackmore***, *supra*. In this regard, a "plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk." ***Jones v. Muskegon County***, 625 F.3d 935, 941 (6th Cir. 2010). An officer "must have actually perceived a significant risk to an inmate's health to have violated his constitutional right: 'an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as an infliction of punishment." ***Rouster v. County of Saginaw***, 749 F.3d 437, 446 (6th Cir. 2014) quoting ***Farmer v. Brennan***, 511 U.S. 825, 839 (1994). If the individuals fail to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment. ***Watkins***, 273 F.3d at 686. ("It is not enough that there was a danger of which an officer should objectively have been aware.")

The subjective component must be addressed for each defendant individually. ***Garretson v. City of Madison Heights***, 407 F.3d 789, 797 (6th Cir. 2005); see ***Dunn v. Tennessee***, 697 F.2d 121, 128 (6th Cir. 1982). "If anyone of them is to be held liable it must be based on the actions of that defendant in the situation the defendant faced and

not based on any problems caused by the errors of others, either defendants or non-defendants." *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991). The focus must therefore be on each defendant's actions. See *Vance v. Peters*, 95 F.3d 987, 992 (7th Cir. 1996) ("The focus must be on whether any of the defendants had the personal involvement necessary to permit the finding of liability.").

In this case, Martin cannot succeed on a claim of deliberate indifference to his serious medical needs.  Martin states in his Complaint he required additional mats because of a sore back.  He was specific in his testimony that Nurse Stone was in charge of the dispersal of mats at Osceola County Jail.  As with all of the medical decisions, Captain Wayne relied on the medical expertise of Nurse Stone and other PCS employees when it came to medical accommodations.

Moreover, Martin admits there were no doctor's orders that he receive extra mats due to any medical conditions.  That being said, Martin contends the Court order he receive extra mats.  Of course, Martin is incorrect.  There is no order from the Court stating Osceola County Jail must provide Martin with additional Mats.  As such, Captain Wayne would retain his immunity and Martin's deliberate indifference claims must fail.

### b. Cruel and Unusual Punishment

"Extreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987). An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2)

a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.' " *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). However, as former Chief Justice Rehnquist remarked, "[i]n short, nobody promised [inmates] a rose garden; and I know of nothing in the Eighth Amendment which requires that they be housed in a manner most pleasing to them...." *Atiyeh v. Capps*, 449 U.S. 1312, 1315–16 (1981).

In this case, Martin contends he suffered during his incarceration because he was not provided with extra mats for his sore back.  Martin cannot prevail on a "Cruel and Unusual Punishment" count against Captain Wayne because, as previous stated: (1) Nurse Stone, not Captain Wayne, was in charge of administration of mats; (2) there existed no doctor's order to provide Martin with additional mats; and (3) the Court order did not require Osceola County Jail to provide Martin with extra mats.

Not only did Martin's testimony clarify Captain Wayne was not in charge of the administration of mats, but Martin has presented no evidence that suggests Captain Wayne was in violation of his Eight Amendment rights.  Constitutionally, Martin is not entitled to anything he requests in jail.  Osceola County provided Martin with adequate shelter, no more or less than given to other inmates.  For those reasons, Captain Wayne retains his immunity and summary judgment in favor of Captain Wayne as to Martin's Eighth Amendment claims is proper.

## IV.   LIGHTING

Martin complains Osceola County's jail lighting policy "promoted stress and sleep deprivation."  Defendant has not found a case heard by the Sixth Circuit concerning the constitutionality of a jail's lighting policy, however, the Fifth Circuit has heard numerous cases addressing this issue and found lighting policies almost identical to Osceola County's constitutional.

Providing inmates with approximately six hours of dimmed lights each night in which to sleep is not a constitutional deprivation. See *Chavarria v. Stacks*, 102 F. App'x 433, 435 (5th Cir.2004) (holding that constant illumination of a prison administrative unit at night in order to prevent guards from being assaulted was a reasonable security measure and thus did not violate the Eighth Amendment); *Kamau v. La. State Police Dep't*, No. 09–1488–P, 2013 WL 5462234, at *10 (W.D.La. Sept. 30, 2013); *Zatko v. Rowland*, 835 F.Supp. 1174, 1181 (N.D.Cal.1993) (noting that continuous light depriving a prisoner of sleep would be unconstitutional but holding there was no constitutional violation because the officers did not use the light to keep the prisoner awake); *Williams v. Ward*, 567 F.Supp. 10, 15 (E.D.N.Y.1982) (holding that keeping hallway lights on all night for security reasons was not a constitutional violation even where plaintiff claimed he was unable to sleep). If courts have failed to find that constant illumination is a constitutional violation when done for legitimate penological reasons, clearly dimmed lights for six hours is not a constitutional violation. Plaintiff "has not shown an egregious deprivation of a minimal life necessity that was so base or inhumane as to give rise to a constitutional violation." *Conlin v. Thaler*, 347 F. App'x 983, 984 (5th Cir.2009).

In this case, there is no evidence to suggest Osceola County's jail lighting policy is unconstitutional.  There is no factual basis showing Captain Wayne or the jail was keeping its lights on to keep Martin awake.  The purpose of the policy is clear: it is a reasonable security measure for prison guards to ensure their own safety and the safety of other inmates.  Martin has failed to present any evidence that would give rise to a constitutional violation.  Therefore, Captain Wayne retains his qualified immunity to Plaintiff's Eight Amendment claims concerning the Osceola County jail lighting policy.

Moreover, Martin has alleged Captain Wayne forced him to sleep on the floor.  This is allegation is unfounded and without evidentiary support.  The record shows no evidence Captain Wayne forced Martin to sleep on the floor.  In fact, Martin admits by his own testimony he was provided with a mat to sleep on.  While Captain Wayne appreciates Martin may have been unhappy with his accommodations, his mere unhappiness does not give rise to a constitutional violation.  As Justice Rehnquist described, nobody is promised a rose garden.

## CONCLUSION AND RELIEF REQUESTED

As described above, neither the allegations of the Plaintiffs' Amended Complaint, nor the deposition testimony of Plaintiffs himself, present any basis for claims under the theories of liability asserted against Wayne in this case.  For that reason, Defendant Wayne is entitled to summary judgment in his favor as a matter of law under Fed. R. Civ. P. 56, dismissing the Plaintiffs' complaint against him.

Respectfully submitted:

CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.

/s/ Curt A. Benson
Allan C. Vander Laan (P33893)
Curt A. Benson (P38891)
Bradley C. Yanalunas (P80528)
Attorneys for Defendant Russ Wayne
2851 Charlevoix Drive, SE, Ste. 327
Grand Rapids, MI 49546
(616) 975-7470
avanderlaan@cmda-law.com
cbenson@cmda-law.com

Dated: October 26, 2018