UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGER CLEO MARTIN,

        Plaintiff,

v.

RUSS WAYNE, CHERYL SIMPSON,
and SHANNON STONE,

        Defendants.
_____/

Case No. 1:16-cv-1314

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

      This is a *pro se* civil rights action brought by Roger Cleo Martin, a former inmate at the Osceola County Jail, pursuant to 42 U.S.C. § 1983. This matter is now before the Court on motions for summary judgment filed by defendants Dr. Cheryl Simpson (ECF No. 83), Nurse Shannon Stone (ECF No. 86), and Capt. Russ Wayne (ECF No. 92).

    **I.**    **Background**

    **A.**    **Plaintiff's complaint and amended complaint**

      Plaintiff filed a complaint on November 9, 2016, naming three defendants: Russ Wayne (Osceola County Jail Administrator); Jail Doctor (Unknown); and Nurse Practitioner (Unknown). Compl. (ECF No. 1). In a motion dated July 12, 2017 (ECF No. 37), plaintiff sought to amend the complaint to include the names of the unknown defendants, whom he identified as Dr. Simpson and Nurse Stone. This motion included a proposed amended complaint dated July 5, 2017 (ECF No. 37-1). After some deliberation, the Court granted plaintiff's motion to amend the complaint. Order (ECF No. 43). The amended complaint named three defendants: Russell Wayne;

1

Cheryl Simpson (Osceola County Jail Doctor); and Shannon Stone (Osceola County Jail Nurse). Amend. Compl. (ECF No. 44, PageID.241-242).

Plaintiff set forth the following allegations in his amended complaint. He entered the jail on November 15, 2013. Amend. Compl. at PageID.243. Prior to that time, plaintiff was being treated for seizures, spinal stenosis, chronic back pain, and thyroid cancer. *Id*. At some point before his sentencing, plaintiff asked the state court to allow him an extra mat to sleep on in the jail due to back pain. *Id*. The court responded by including language in the judgment of sentence acknowledging plaintiff's disability and agreeing that the jail will accommodate him when possible. *Id*.

While plaintiff alleged that the state court directed defendants to provide him with an extra mat during his incarceration, there is no evidence to support this claim. The state court judgment sentenced plaintiff to 363 days in jail and included the following statement, "Crt acknowledges def's disability & agrees jail will accomodate [sic] whereever [sic] possible." *Id*. at PageID.9. Judgment of Sentence (Nov. 15, 2013) (ECF No. 1-1, PageID.8). There is no no record identifying the "disability" or proposed accommodation. Plaintiff's original complaint included a "to whom it may concern" letter from plaintiff's physician Dr. Marshall Wickens dated November 6, 2013, which stated in part: that plaintiff has a history of thyroid cancer, seizure disorder, mood disorder, ethanol abuse, prediabetes, and spinal stenosis with chronic back pain; that plaintiff will need ongoing medical care for these conditions; that plaintiff may be incarceratred for a prolonged period of time; and, if this is the case, that plaintiff's treating physician should be made aware of these conditions to arrange necessary accommodations. Dr. Wickens letter (ECF No. 1-1, PageID.10). However, there is no record that the judge saw the letter prior to sentencing. In this regard, while plaintiff's original complaint included letters to the sentencing judge complaining

about his lack of medical treatment and seeking early release, there is no evidence that the judge took any action on the letters.  *See* Letters (ECF No. 1-1, PageID.11-12).

Plaintiff further alleged that on his "first night" at the jail (November 15, 2013), Nurse Stone took away two of his medications (Xanax and ibuprofen) and cut his dosage of Dilantin in half.  Amended Compl. at PageID.243.  Capt. Wayne and Nurse Stone also refused to provide plaintiff with a mat to sleep on.  *Id*.  Plaintiff alleged that he suffered a grand mal seizure on November 19, 2013.  *Id*.  He was taken to the hospital, where his Dilantin prescription was restored.  *Id*.  Plaintiff also alleged that Nurse Stone refused to fill the hospital prescriptions and withheld Dilantin under Dr. Simpson's orders.  *Id*.

Plaintiff's cryptic allegations with respect to his emergency room visit and the later reduction in Dilantin are not supported by the medical records.  When plaintiff arrived at the emergency room, he stated that he fell and hit his head on the toilet and then fell on his back.  Medical Records (ECF No. 84-1, PageID.597).  While plaintiff had a history of seizure disorder, plaintiff told hospital personnel that he did not think that he seized at the jail.  *Id*.  In addition, the emergency room doctor did not diagnose a grand mal seizure.  Rather, the doctor diagnosed plaintiff as follows: "1. Fall, unclear etiology.  2. History of seizure disorder with subtherapeutic Dilantin level.  *Again, I did not feel the patient seized today*."  *Id*. at PageID.597-598 (emphasis added).

Contrary to plaintiff's allegations, medical rcords reflect that the jail medical staff increased plaintiff's Dilantin dosage after he returned from the hospital.  The hospital emergency department suggested raising plaintiff's Dilantin from 200 mg to 300 mg per day, but noted that the increase "will need to be through the jail doctor."  *Id*. at PageID.597. The Osceola County Jail records reflect that plaintiff was receiving 300 mg of Dilantin as of December 19, 2013.  *Id*. at

3

PageID.625.  The Dilantin dosage was reduced back to 200 mg on or about January 16, 2014 in response to *plaintiff's request* to reduce the dosage.  *Id*. at PageID.629.  Specifically, plaintiff advised the medical staff that 3 Dilantin pills (300 mg) was "too much" and was "beginning to make my gums bleed."  *See* Inmate medical request (ECF No. 88, PageID.819).

Finally, plaintiff alleged that he remained in the jail until September 4, 2014. *Id*. at PageID.244.   During his incarceration, plaintiff suffered from a variety of problems (pinched nerves, numbing in the right leg, numbing in the right foot, and severe abnormal heart rhythms).  *Id*.  Defendants denied his requests for pain medication and an extra mat to sleep on, and Capt. Wayne forced plaintiff to sleep on the floor in a "boat" which resulted in the pinched nerves and numbing.  *Id*.  In addition, the jail lighting remained on throughout the night and inmates were allowed to create excessive noise, which interfered with plaintiff's ability to sleep and left him exhausted.  *Id*. The state judge refused to place plaintiff at home on a tether.  *Id*.  Plaintiff alleged that the jail conditions "took their toll" and he suffered a stroke on or about September 4, 2014, at which time he was discharged from the jail, taken to the hospital. and diagnosed with a hemorrhagic stroke.  *Id*.

The gist of plaintiff's amended complaint is that from November 15, 2013 through September 4, 2014:

> Jail administrator Russ Wayne and medical personell [sic] acted with willful, malicious, indifference to the jails [sic] policy guaranteeing safe custody, fair treatment, and decent living conditions, as well as to a court order to accomodate [sic] my disabilities wherever possible.

Amend. Compl. at PageID.244.  Plaintiff seeks compensatory damage of $25,000.00 "per person" and punitive damages of $100,000.00 "per person" for a total amount of $375,000.00.  *Id*. at PageID.245.  Plaintiff also included a generic request for "any other relief which the court deems appropriate."  *Id*.

B.  **Statute of limitations**

The Court previously held that some of plaintiff's claims against Dr. Simpson and Nurse Stone were barred by the statute of limitations. As a result, plaintiff's claims against these two defendants are limited to incidents which occurred between July 12, 2014 and his discharge from the jail on or about September 4, 2014. *See* R&R (ECF No. 105); Order (ECF No. 106).

III.  **Motions for summary judgment**

A.  **Legal standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Plaintiff's claims

#### 1. Civil rights claims under 42 U.S.C. § 1983

The parties have proceeded with this action as a prisoner civil rights action brought against the three individual defendants (Capt. Wayne, Dr. Simpson, and Nurse Stone) pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem*, Ohio, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Although plaintiff did not name Osceola County as a defendant in this action, his "official capacity" claim against Capt. Wayne could be construed as directed against the county. Under Michigan law, the policies of the sheriff and the jail administrator regarding the operation of the jail are attributable to the county. *Rushing v. Wayne County*, 436 Mich. 247, 260, 462 N.W.2d 23, 29 (1990). To the extent that plaintiff's action is against Capt. Wayne in his official

6

capacity as the Osceola County jail administrator, it is a suit against Osceola County itself. *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 349 (6th Cir. 2007), citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). *See, e.g., Morgan v. Wallin*, No. 1:09-cv-646, 2011 WL 2745945 at *4 (March 2, 2011), R&R adopted, 2011 WL 2837608 (W.D. Mich. July 14, 2011) (a lawsuit against the Emmet County Sheriff in his official capacity "is nothing more than a suit against Emmet County itself").

To sustain a § 1983 action against the county, plaintiff must demonstrate that the county engaged in a policy or custom in violation of his constitutional rights:

> Under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), county liability is limited to situations in which the deprivation of constitutional rights results from an official policy or custom of the county. The mandate of *Monell* and its progeny requires (1) that a municipality be held liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," *Monell*, 436 U.S. at 694, 98 S.Ct. 2018, 56 L.Ed.2d 611, and (2) that there be an "affirmative link between the policy and the particular constitutional violation alleged," *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

*Petty*, 478 F.3d at 347. Here, plaintiff has neither alleged nor identified any official policy or custom which Osceola County enforced to deprive plaintiff of his constitutional rights. Accordingly, Capt. Wayne should be granted summary judgment with respect to the "official capacity" claim brought against him under § 1983.

## 2. Plaintiff's claim under the Americans with Disabilities Act

In his response to the motions for summary judgment, plaintiff changed course and claimed that he is entitled to relief under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq*. Plaintiff's Response (ECF No. 98). Plaintiff contends that this claim arose because "[o]nce the [sentencing] court stated that my disability was recognized my custody, my medical

7

care, treatment, and accommodation by all parties involved became governed by the Americans with Disability Act." *Id*. at PageID.967.

Plaintiff is not entitled to relief under the ADA. First, plaintiff's amended complaint did not allege a violation of the statute or set forth any facts which state a claim under that statute. While *pro se* pleadings are to be liberally construed, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), "this court is not required to conjure up unpled allegations," *Dietz v. Sanders*, 100 Fed. Appx. 334, 338 (6th Cir. 2004). Contrary to plaintiff's contention, the state court's judgment did not create a cause of action under the ADA. The judgment did not identify any particular disability or direct the jail to provide any particular accommodation.[1] In this regard, plaintiff did not object to the report and recommendation which characterized his claims as brought under § 1983 and subject to the three-year statute of limitations. *See* R&R (ECF NO. 105).

Second, while the amended complaint named Capt. Wayne in both his "[o]fficial and/or personal capacity", plaintiff seeks monetary damages against Wayne in his personal capacity, *i.e.*, the amended complaint seeks a $25,000.00 compensatory award "per person" and a $100,000.00 punitive award "per person." Plaintiff cannot maintain an ADA action for monetary damages against the individual defendants. *See Lee v. Michigan Parole Board*, 104 Fed. Appx. 490, 492-93 (6th Cir. 2004) (the ADA does not impose liability on individuals).

Third, even if the Court construed the amended complaint as including a claim under the ADA directed against Osceola County, the claim would fail. Such a claim is brought pursuant to 42 U.S.C. § 12131 *et seq*. ("Title II").

> Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." [42 U.S.C.] § 12132 (2000 ed.). A " 'qualified individual with a disability' " is defined as "an individual with a disability who,

---

[1] There is no sentencing transcript to explain what exactly the state court meant by this language.

> with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2). The Act defines " 'public entity' " to include "any State or local government" and "any department, agency, ... or other instrumentality of a State," § 12131(1).

*United States v. Georgia*, 546 U.S. 151, 153-54 (2006). For purposes of the ADA, a public entity includes state prisons. *Id*. at 154, citing *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998). *See also, Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010) ("[t]he ADA applies to both federal and state prisons"); *Brooks v. County of Macomb*, No. 13-CV-15082, 2015 WL 4430190 at *11 (E.D. Mich. July 20, 2015) ("[t]he protections of the ADA extend to inmates housed in county jails"). In addition, Title II authorizes suits by private citizens for money damages against public entities that violate § 12132. *Georgia*, 546 U.S. at 154, citing 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794a).

"To establish a prima facie case of intentional discrimination under Title II of the ADA, a plaintiff must show that: (1) [he] has a disability; (2) [he] is otherwise qualified; and (3) [he] was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of [his] disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (footnote omitted). Here, plaintiff has failed to establish a prima facie case under the ADA. A "disability" under the ADA is "physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1). While plaintiff has a history of various medical conditions, he has not established that he suffers from any particular impairment "that substantially limits one or more major life activities." Furthermore, plaintiff has not established that he was excluded from services, programs or activities at the jail due to any particular disability. As discussed, plaintiff's claims arise from defendants' alleged failure to

9

comply with the Eighth Amendment, i.e., defendants were deliberately indifferent to his serious medical needs by denying him medication and an extra mat, and Capt. Wayne engaged in cruel and unusual punishment because he left the lights on in the jail and allowed other inmates to make noise. Accordingly, defendants should be granted summary judgment with respect to any claim made against them under the ADA.

### C. Plaintiff failed to exhaust his claims against Dr. Simpson

#### 1. Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones*, 549 U.S. at 204. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. Plaintiff's claims

During his deposition, plaintiff testified as follows. He has two claims against Dr. Simpson in this case. First, the doctor cut his Dilantin prescription in half. Martin Dep. (ECF No. 83-3, PageID.531). Second, the doctor did not give him an extra mat. *Id*. Plaintiff was aware that the Osceola County Jail had an administrative grievance policy and he filed grievances pursuant to the policy during his incarceration at the jail. *Id.* at PageID.532. However, plaintiff did not submit a grievance regarding the Dilantin dosage or submit a grievance against Dr. Simpson for cutting his Dilantin dosage in half. *Id*. Furthermore, plaintiff did not know whether he filed a grievance against Dr. Simpson for not giving him an extra mat. *Id*. at PageID.533. In short, there is no evidence that plaintiff filed any grievances against Dr. Simpson for the claims alleged against her. Plaintiff has failed to properly exhaust his claims alleged against Dr. Simpson in this lawsuit. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, Dr. Simpson is entitled to summary judgment for lack of exhaustion.

### D. Eighth Amendment deliberate indifference claims against Nurse Stone and Capt. Wayne

It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id.* at 8-9. "Because society does

11

not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### 1. Nurse Stone

As discussed, plaintiff's claims against Nurse Stone are limited to incidents which occurred between July 12, 2014 and his discharge from the jail on or about September 4, 2014. In her affidavit, Nurse Stone stated: that she was an independent contractor; that her professional corporation entered into contracts with Osceola County to provide nursing services to inmates at the Osceola County jail; that under the contracts, she provided nursing services at the Osceola County jail "from January 1, 2011 until the summer of 2014"; and that she was "one of the health care providers who provided care to plaintiff Roger Martin at Osceola County jail between November 13, 2013 and June 2014." Stone Aff. (ECF No. 90, PageID.882). Based on this record, there is no evidence that Nurse Stone treated plaintiff during the relevant time period of July 12,

12

2014 through September 4, 2014. Accordingly, Nurse Stone is entitled to summary judgment.[2]

### 2. Captain Wayne

#### a. Plaintiff's claims

During his deposition, plaintiff identified three claims against Capt. Wayne. First, jail personnel cut his Dilantin dosage in half and took away his prescriptions for ibuprofen and Xanax. Martin Dep. (ECF No. 93-3, PageID.923-924). Second, jail personnel did not comply with the sentencing judge's instructions to accommodate him because they did not give him an extra mat. *Id*. at PageID.924. Third, he could not sleep because the lighting was left on all night and other inmates in the jail were noisy. Wayne Brief (ECF No. 93, PageID.905-906).[3]

#### b. Qualified Immunity

Captain Wayne contends that he is entitled to summary judgment based upon qualified immunity. Under this affirmative defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The dispositive question is whether the violative nature of the particular conduct at issue in the lawsuit is clearly established. *See Mullenix v. Luna*, -- U.S. --, 136 S. Ct. 305, 308 (2015). When a defendant raises the issue of qualified immunity on summary judgment, "[t]he ultimate burden of proof is on the

---

[2] Nurse Stone recently filed a supplemental brief (ECF No. 107). This brief included a second affidavit, in which Stone stated that she found additional information which indicates that she worked at the jail through July 2015. Second Aff. at PageID.1055. However, Stone's only interaction with plaintiff during the relevant time period was on July 26, 2014, when she advised plaintiff that his Keppra tablet had changed in color and dosage ("[t]hey will now be 500 mg tabs & white in color"). *Id*. at PageID.1055-1056, 1058, and 1060. The untimely brief and affidavit are not before the Court, because Nurse Stone did not not seek leave to file either document. However, even if the second affidavit was properly before the Court, it would not change the undersigned's recommendation, because Nurse Stone's only interaction with plaintiff during the relevant time period is unrelated to his claims.

[3] In his brief, defendant Wayne cites pages 52 and 53 of plaintiff's deposition. While Wayne stated that the deposition testimony was attached as Exhibit 2, Wayne's brief failed to include copies of the cited testimony. Plaintiff's response does not deny the accuracy of the testimony.

13

plaintiff to show that the defendant is not entitled to qualified immunity." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Although the plaintiff bears the ultimate burden, "[t]he defendant bears the initial burden of coming forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question." *Id*. Once this is accomplished, "the burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Id*. To meet his burden on summary judgment, a plaintiff must show (1) that a constitutional right was violated, and (2) that the right was clearly established at the time of the violation. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). The Court may exercise its discretion to decide which prong of the test to address first in light of the circumstances of the case. *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir 2011), citing *Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009).

While Captain Wayne sets forth the legal standard for this doctrine, he does not develop any meaningful argument on the issue, stating:

> As described above, Martin's federal claims fail fundamentally because he has failed to present any factual basis for a finding that Captain Wayne engaged in any conduct violative of Plaintiff's federal rights. Because Martin has not shown a violation of his federal rights, there is no basis to deny Captain Wayne his qualified immunity against his claims.

Capt. Wayne Brief (ECF No. 93, PageID.908). Capt. Wayne's cursory argument fails to meet his "initial burden of coming forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question." *Gardenhire*, 205 F.3d at 311. In short, his argument does not address the qualified immunity defense in a meaningful manner. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly,

Capt. Wayne's motion for summary judgment on grounds of qualified immunity should be deemed waived and denied.

### c.     Medications

Capt. Wayne points out that plaintiff's allegations regarding the inadequate medication are directed against the medical providers, Dr. Simpson and Nurse Stone, and that he did not provide medical services to plaintiff. Rather, Capt. Wayne deferred all medical decisions and treatment of inmates at the jail "to the medical experts." Wayne Aff. (ECF No. 93-1, PageID.918). In this regard, the agreement between Osceola County and Premiere Correctional Services (PCS) provided that "PCS shall provide the health care services and management services at the Jail." *See* Agreement (ECF No. 93-4).[4] Capt. Wayne has established that the medical providers were responsible for prescribing and monitoring plaintiff's medication. Accordingly, Capt. Wayne should be granted summary judgment with respect to plaintiff's deliberate indifference claim regarding the disbursement of medication.

### d.     **Failure to provide an extra mat**

Plaintiff contends that Capt. Wayne was deliberately indifferent to his serious medical needs for failing to provide him with an extra mat. In his affidavit, Capt. Wayne stated, "I only issue extra mats to prisoners if I am ordered to do so by a doctor or nurse." Wayne Aff. at PageID.918. There is no evidence that a doctor or nurse ordered an extra mat for plaintiff. Capt. Wayne could properly rely on the decisions of the doctor and nurse as to whether plaintiff had a medical need for an extra mat. While plaintiff refers to the court order that the jail accommodate him, that order did not direct Capt. Wayne to provide plaintiff with an extra mat. Accordingly,

---

[4] Defendant stated that PCS' agreement commenced on January 1, 2011, was renewed on January 1, 2014, and remained in effect throughout plaintiff's incarceration. Defendant Wayne's Brief (ECF No. 903-904). While defendant Wayne's brief cites the attached "PCS Agreements," counsel attached a copy of the agreement with an effective date of January 1, 2014 (ECF No. 93-5, PageID.939-948).

15

Capt. Wayne should be granted summary judgment with respect to the claim that he failed to provide plaintiff with an extra mat.

### E. Eighth Amendment Cruel and unusual punishment claim against Capt. Wayne

Plaintiff's remaining claims against Capt. Wayne are characterized as the infliction of cruel and unusual punishment. The Supreme Court has held that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson*, 503 U.S. at 5. "The contemporary standards of civilized decency that currently prevail in society determine whether conditions of confinement are cruel and unusual." *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004), citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). As discussed, a viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer*, 511 U.S. at 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson*, 503 U.S. at 8. To establish the objective component, only deprivations denying "the minimal civilized measure of life's necessities" are grave enough to create a violation of the Cruel and Unusual Punishment Clause. *Hadix*, 367 F.3d at 525, citing *Hudson*, 503 U.S. at 9, and quoting *Rhodes*, 452 U.S. at 347. To establish the subjective component, the defendant must act with deliberate indifference to an inmate's health or safety. *See Wilson*, 501 U.S. at 302-03.

#### 1. Extra mats

Plaintiff contends that Capt. Wayne engaged in cruel and unusual punishment for failing to provide him with an extra mat. As discussed, there was no medical order directing Capt. Wayne to provide plaintiff with an extra mat and the court did not order him to do so. Capt. Wayne has submitted a video from the jail which depicts plaintiff in his cell, which included a bed and a

16

toilet. *See* DVD (ECF No. 95). While plaintiff may have wanted better accommodations, "the Constitution does not mandate prisons." *Rhodes*, 452 U.S. at 349. The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Id*. at 348 (citation omitted). For these reasons, Capt. Wayne should be granted summary judgment on plaintiff's claim that he inflicted cruel and unusual punishment by depriving plaintiff of an extra mat.

### 2. Lighting and Noise

Finally, plaintiff claims that Capt. Wayne engaged in cruel and unusual punishment by causing him to suffer from sleep deprivation, i.e., Capt. Wayne left the jail lights on during the night and allowed other inmates to make noise. Lighting in the jail is set forth in the policy, which provides in pertinent part that:

> Cell lights to be turned on at 0600 daily. Lights will be turned half off at 2330 Sunday through Thursday and 0130 on Friday and Saturday. At the discretion of the Sergeant, may be allowed to stay on to finish current television program. (Movie, Sporting Event)

Osceola County Sheriff's Office Policy and Procedures (ECF No. 93-6 at PageID.954). It is not cruel and unusual punishment for a jail to leave dimmed lights on during the night. Such a policy is reasonably related to the security of the jail. *See Chavarria v. Stacks*, 102 Fed. Appx. 433, 435-36 (5th Cir. 2004) (a policy of constant illumination is reasonably related to the legitimate penological interest of guard security).

Finally, plaintiff alleged that Capt. Wayne violated his Eighth Amendment rights because he allowed the other inmates to stay up all night, play cards, yell and make noise. Plaintiff's allegation fails to contain sufficient factual matter to state a claim for relief under the Eighth Amendment's prohibition for cruel and unusual punishment. His allegation is nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" which is insufficient to

17

plead a cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As discussed, the jail policy required that cell lights be turned on at 0600, and did not require that the lights be dimmed until 2330 Sunday through Thursday, and 0130 on Friday and Saturday. Presumably, the inmates could engage in activities while the lights were turned on, even though plaintiff may have been in bed at that time. While plaintiff did not like his living situation, this is not a sufficient the basis for an Eighth Amendment claim. As one court explained,

> "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir.1987). "Constitutionally adequate housing is not denied simply by uncomfortable temperatures inside cells, unless it is shown that the situation endangers an inmates' health. Similarly, high levels of noise are not, without more, violations of the Eighth Amendment." *Grubbs v. Bradley*, 552 F.Supp. 1052, 1123 (M.D. Tenn. 1982).

*Hunter v. Helton*, No. 1:10-CV-00021, 2010 WL 2405092 at *4 (M.D. Tenn. June 10, 2010). Furthermore, plaintiff has provided no evidence that Capt. Wayne allowed the other inmates to make noise as part of a deliberate scheme to inflict cruel and unusual punishment on plaintiff by depriving him of sleep. Accordingly, Capt. Wayne should be granted summary judgment on this claim.

### IV.    Recommendation

For the reasons set forth above, I respectfully recommend that the motions for summary judgment filed by Dr. Simpson (ECF No. 83), Nurse Stone (ECF No. 86), and Capt. Wayne (ECF No. 92) be **GRANTED**, and that this action be **TERMINATED**.

Dated: April 26, 2019                             /s/ Ray Kent
                                                  RAY KENT
                                                  United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).